UNITED STATES of America,
Plaintiff-Appellee,

v.

J. Murray HOOKER, II,
Defendant-Appellant.

No. 87–5026.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 1, 1987.

Decided March 10, 1988.

Philip Steward Marstiller, Richmond, Va., (J. Jay Litten, Litten, Sipe and Miller, Harrisonburg, Va., Barbara J. Gaden, Richmond, Va., Jeffrey C. Southard, Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C., Richmond, Va., on brief), Milton Gordon Widenhouse, Jr., Raleigh, N.C., Todd Clark Concormon, for defendant-appellant.

Sara Bradkin Criscitelli, Dept. of Justice, Washington, D.C., William Graham Otis, Asst. U.S. Atty., Alexandria, Va., (Samuel T. Currin, U.S. Atty., Raleigh, N.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, sitting en banc.

DONALD RUSSELL, Circuit Judge:

The appellant Hooker was indicted on three charges: (I) conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (1982); (II) conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846 (1982); and (III) conspiracy to commit a RICO offense in violation of 18 U.S.C. § 1962(c) (1982). Two weeks before trial Hooker moved to dismiss Count III for failure to include one element of the substantive offense, namely, that the business enterprise had an effect on interstate commerce. The district judge found the motion to be untimely. At the close of the government's case Hooker again raised the sufficiency of the indictment. The district judge denied the motion for judgment of acquittal, saying that the appellant should have addressed this issue by requesting a bill of particulars. The trial of the case resulted in a verdict of guilty on all three counts, with sentences of two years on the first count, two years on the second count, to be served consecutively, and four years on the third count to be served concurrently with the sentences on the first two

counts. Following the jury verdict, Hooker renewed his motion to arrest judgment on Count III but the court denied this motion because even if there had been a deficiency in the indictment in Count III, there was no prejudice to the defendant.

The case was initially heard before a panel of this Court. Before the filing of an opinion herein, the case was consolidated for hearing en banc with the related cases of *United States v. Pupo*, and *United States v. Govantes*, 841 F.2d 1235, because it was thought that the dispositive issue was the same in the cases. There was some difference in the facts of the cases and it has been considered better to file the en banc decisions in the cases separately. This opinion is, therefore, confined to the *Hooker* case and the opinion in *Pupo* and *Govantes* is being filed simultaneously.

I.

The primary question on appeal is whether the failure to include an allegation of an effect on interstate commerce in a RICO charge requires the dismissal of the count and the voidance of the conviction on that charge. We agree that Count III of the indictment was fatally defective and that the conviction thereon must be reversed. The convictions on Counts I and II, however, are affirmed.

II.

Any extensive statement of the facts of this case is unnecessary to the decision of the specific issues of law presented for review. It is sufficient that the appellant J. Murray Hooker II, who was an attorney licensed to practice law in the Commonwealth of Virginia, had as two of his clients Michael T. Miller and Donald Wayne Thagard, both of whom were ostensibly in the construction business but were actually drug traffickers engaged in the distribution of cocaine. Hooker set up corporations and trusts for Miller and Thagard, allegedly to conceal their assets and income arising out of their illegal activity, an activity known popularly as money laundering.

Because of these actions, Hooker was indicted.

### III.

■ Count III of that indictment alleged a conspiracy to violate 18 U.S.C. § 1962(c).[1] The issue in this case is whether the failure of Count III of the indictment to include one essential element of the offense charged in the count invalidated this count of the indictment and required its dismissal. The alleged fatal omission was the failure to charge that the enterprise had an effect on interstate commerce. There is no dispute that this requirement of "an effect on interstate commerce" is an essential element of the offense established in the RICO statute. As the court in *United States v. Sinito*, 723 F.2d 1250 (6th Cir. 1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984), summarized it, there are five elements that the Government must prove for a substantive RICO offense: (1) the existence of an enterprise; (2) the defendant's association with the enterprise; (3) the defendant's participation in the affairs of the enterprise; (4) a pattern of racketeering activity; and (5) the enterprise's effect on interstate or foreign commerce. *See also United States v. Diecidue*, 603 F.2d 535, 536 (5th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781, 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980). Count III of this indictment largely paraphrased the conduct required for a RICO offense with section 1962(c) but failed to allege that the enterprise had any effect on interstate commerce or to state, either directly or through incorporation by reference, any facts that would show that the enterprise affected interstate commerce.

In *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962), the Court stated two of the criteria by which the sufficiency of an indictment under the Fifth and Sixth Amendments may be measured:

These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,' " and, secondly, " 'in the case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' " (citations omitted)

This same case declared, contrary to the ruling below, that "a bill of particulars cannot save an invalid indictment." *Russell*, 369 U.S. at 770, 82 S.Ct. at 1050. Moreover, again contrary to the ruling below, a motion that an indictment fails to charge an offense may be made at any time before verdict. Fed.R.Crim.P. 12(b).

It is the appellant's contention that the fifth element of a RICO offense (that the business enterprise affected interstate commerce) was an essential element of this federal crime, thus making the indictment insufficient on its face and mandating vacation of judgment of conviction on this count for failure to state a RICO offense. The government concedes, as it must, that this element of the RICO offense is not expressly included in Count III, but it contends that the indictment is nonetheless sufficient to state an offense for any of four reasons. We address those reasons seriatim.

### A.

■ It is the government's primary position that, despite the failure to include in the indictment any charge that defendant's conduct involved interstate commerce, such omission was cured by the citation of section 1962(c) in the indictment. The difficulty with this argument is that, in testing the sufficiency of an indictment, "it is the statement of facts in the pleading, rather than the statutory citation that is controlling...." *United States v. Wuco*, 535

---

1. 18 U.S.C. § 1962(c), provides:
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or partic-

 ipate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

F.2d 1200, 1202 n. 1 (9th Cir.1976), *cert. denied,* 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed. 2d 586 (1976); *see also, United States v. Hutcheson,* 312 U.S. 219, 229, 61 S.Ct. 463, 464, 85 L.Ed. 788 (1941). And that has for long been the consistent rule in this Circuit. Half a century ago Judge Parker, speaking for a unanimous court, put it: "It is elementary that every ingredient of crime must be charged in the bill, a general reference to the provisions of the statute being insufficient." *Hale v. United States,* 89 F.2d 578, 579 (4th Cir.1937). We have repeatedly reaffirmed this rule in subsequent cases. *United States v. Hayes,* 775 F.2d 1279, 1282 (4th Cir.1985); *United States v. Pomponio,* 517 F.2d 460, 461 (4th Cir.1975), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). Moreover, this holding is in accord with the rule adopted in at least eight circuits. *U.S. v. Kurka,* 818 F.2d 1427, 1430–31 (9th Cir.1987); *United States v. McLennan,* 672 F.2d 239, 242 (1st Cir.1982); *United States v. Jones,* 647 F.2d 696, 699–700 (6th Cir.1981), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *United States v. Camp,* 541 F.2d 739, 740 (8th Cir.1976); *United States v. Wabaunsee,* 528 F.2d 1, 3 (7th Cir.1975); *United States v. Berlin,* 472 F.2d 1002, 1007 (2d Cir.1973), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973); *United States v. Beard,* 414 F.2d 1014, 1017 (3d Cir.1969); *Robinson v. United States,* 263 F.2d 911, 912 (10th Cir.1959). Further, this is the rule in the vast majority of the state courts, *State v. Huntley,* 473 A.2d 859, 863–64 (Me.1984), and particularly interesting, it is the rule in all the states of this Circuit with a single exception. *Ayre v. State,* 291 Md. 155, 433 A.2d 1150, 1158 (1981); *State v. Cook,* 272 N.C. 728, 158 S.E.2d 820, 822 (1968); *State v. Sossamon,* 259 N.C. 374, 130 S.E.2d 638, 639 (1963); *Wilder v. Commonwealth,* 217 Va. 145, 225 S.E.2d 411, 413 (1976); *contra, State v. Crenshaw,* 274 S.C. 475, 266 S.E. 2d 61, 62 (1980). Were this not the rule, the result would be that stated in *United States v. Berlin, supra:*

> The deficiency was not cured by the fact that each count cited the statute that appellant is alleged to have violated. Although the statutes in question explicitly require knowledge of the falsity, if this were enough to cure a deficient statement, then almost no indictment would be vulnerable to attack; for it is common practice in indictments to cite the statute that is alleged to have been violated.

We accordingly apply the rule in this case and find the count defective for failure to allege an essential ingredient of the offense charged ("interstate commerce").

The government argues though that our conclusion is at variance with the decision in *United States v. Roberts,* 296 F.2d 198 (4th Cir.1961), *cert. denied,* 369 U.S. 867, 82 S.Ct. 1033, 8 L.Ed.2d 85 (1962). In that case the omission of any allegation in the indictment of an ingredient of the crime charged arose only in a collateral attack on the judgment of conviction asserted for the first time on appeal in a 2255 proceeding. The defendant had not raised the objection at trial or on appeal from his conviction. He did not raise it when he filed his 2255 motion. It was only on appeal of the dismissal of his 2255 motion by the district court that he asserted the defect in the indictment. On that appeal, the issue was whether at that late date the conviction was "open to collateral attack" after judgment, on appeal from a denial of his 2255 motion. We held in *Roberts* that the conviction was not, saying that the contention "could not properly be raised in a proceeding under 2255."

This ruling in *Roberts* was in accord with the ruling by the Supreme Court in *Hagner v. United States,* 285 U.S. 427, 429, 433 (1932). There the defendant did not assert his claim that the indictment failed to include an essential element of the offense until after verdict and then by a motion on arrest of judgment. In sustaining the dismissal of the related objection, the Supreme Court said that "upon the record before us, and without deciding that the indictment would have been open to some form of challenge at an earlier stage of the case, we are of opinion that after verdict it is not vulnerable to the attack here made upon it." When the objection is made *after* verdict, the decisions are somewhat differ-

ent. *See United States v. Wabaunsee, supra*, at 2. Under some decisions the rule is that the objection is too late when made *after* verdict, but in other cases where the objection is made after verdict, the alleged deficiency is to be reviewed for validity under a more liberal standard and is not necessarily absolutely invalid. In *Finn v. United States*, 256 F.2d 304, 306–07 (4th Cir.1956),[2] we seem to have followed the latter view. If the plaintiff has delayed in raising the objection until his 2255 habeas action, *Roberts* would find the objection too late. In any event, when, as here, the objection is made both before trial and at trial before verdict, the rule in *Hale, Hayes* and *Pomponio* finding the indictment is invalid is followed in this Circuit.

The government has suggested, however, that some distinction should be made between the situation where the reference to the applicable statute is embedded in the body of the indictment, as here, and where it appears either at the end of the indictment or by marginal reference. *Kaneshiro v. United States*, 445 F.2d 1266, 1269 (9th Cir.1971), *cert. denied*, 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971), is cited by the government as supportive of this distinction. That case did note the difference in the two situations but it must be emphasized that this comment was made in a case where the objection to the sufficiency of the indictment was first raised on appeal from the judgment of conviction. It is not any more analogous to this case than *Roberts* was, since, as we have often noted, the defendant in this case raised his objection both before trial and during trial.

*United States v. Stefan*, 784 F.2d 1093 (11th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 193, 93 L.Ed.2d 125, — U.S. —, 107 S.Ct. 650, 93 L.Ed.2d 706 (1986), on which the government also relies is not actually on point. In that case the defendant was charged with a violation of 18 U.S.C. § 1001, which makes it a crime to "knowingly and willingly" make certain

false statements. The indictment charged that Stefan made the false statements "knowingly," but failed to allege that he also acted "willingly." The court stated, "[W]hen the indictment specifically refers to the statute on which the charge was based, the statutory language may be used to determine whether the defendant received adequate notice." *Stefan*, 784 F.2d at 1101–02. The court also stated, however, that even if the count had not referred to the statute, "knowingly" and "willingly" were *mens rea* requirements with such slight analytical distinctions that either term alone was sufficient to inform the defendant of the charge against him. In *Stefan*, therefore, the major part of the *mens rea* element was present. In the case at bar, by contrast, an element is missing in its entirety. But, to the extent that *Stefan* may be said to rely on a mere statutory reference in the indictment to supply an essential element of the offense charged, it is contrary to implicit precedent in this circuit, as well as stated law in a substantial majority of the Circuits which have considered the issue and we explicitly reject the ruling to that effect in *Stefan*.

Nor do we find significance in the fact that Count III alleges a conspiracy rather than a substantive crime. Although an offense that is the object of a conspiracy need not be delineated in the indictment with the same particularity as a substantive offense, *Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927), this admonition applies to the statements of fact that "flesh out" the indictment—not the basic elements of the offense itself. *Nelson v. United States*, 406 F.2d 1136 (10th Cir.1969). *Wong Tai* contains no language which would impart validity to an indictment which omits an allegation of an element of the crime charged nor does it suggest at any time in the opinion that a mere citation of the statute under which the indictment issues will sat-

---

**2.** In *Finn*, we said:
 "Indictments and informations are construed more liberally after verdict than before, and every intendment is then indulged in support of the sufficiency" and "in reviewing the denial of a motion made after verdict, our task is to determine only whether 'the necessary facts appear in any form, or by a fair construction can be found within terms' of the information."

isfy the requirement that the indictment contain a clear statement of the elements of the offense charged.

### B.

■ The government's second argument is one advanced by the court below: *i.e.*, that Hooker was not taken by surprise. The government contends that even if notice cannot be imputed from the statutory citation, Hooker must have had actual notice from the indictment itself because he was able, two weeks before trial, to move for dismissal of the indictment and to identify with particularity the missing element. Were we to accept this argument, however, we would merely encourage defendants with questionable indictments to defer their motions until after trial. This would be detrimental to our judicial system and would promote unnecessary trials. It also would penalize defendants with valid objections because if the question is first raised on appeal, an indictment's sufficiency is tested by a stricter standard than if the question was raised first in the proceedings below. *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir.1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *Wabaunsee*, 528 F.2d at 2. We are unwilling to hold, in effect, that a pretrial motion charging the insufficiency of the indictment can be self-defeating merely because the motion could not have been brought without actual notice of the missing element.

Even if we were to accept this suggestion, however, notice is only half of the question. In both *Russell* and *Hamling* the Court stated that a sufficient indictment must contain the elements of the offense *and* apprise the defendant of the nature of the charge. The requirement of notice derives from the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation. The inclusion of all elements also derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present. In most cases these conjunctive requirements are inseparable. Infrequently, as in *Russell*, the in-

dictment satisfies one of those requirements but does not simultaneously satisfy the other. In *Russell* the indictment contained the elements of the offense but this by itself was insufficient to apprise the defendant of the nature of the charge so he could prepare a defense. In the present case, the defendant somehow acquired actual notice of the nature of his offense. But even if we were to assume that this notice emanated from the indictment, (an assumption not justified under the authorities in our opinion) we would still be left with a document that did not contain any part of one element of the offense, and thus did not satisfy the Fifth Amendment requirement that all elements of the offense have been considered and found by the grand jury. *See Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed. 2d 252 (1960). Therefore, we reject the government's position on this issue.

### C.

The government's third argument is that the court can look to the indictment as a whole to determine the sufficiency of a charge that, standing alone, may be insufficient. Although neither of the other charges in this case required an effect on interstate commerce as an essential element, ¶ E of Count II, which was a predicate offense, included an allegation that Michael Miller, a member of the conspiracy to distribute cocaine, traveled from Virginia to Florida in an attempt to purchase cocaine. The government contends that this is sufficient to show that the business enterprise had an effect on interstate commerce.

In this argument the government relies on *United States v. Esposito*, 771 F.2d 283 (7th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1187, 89 L.Ed.2d 302 (1986). In that case the defendant was charged with seven counts of extortion in violation of the Hobbs Act, and four counts of travel in interstate commerce with intent to commit extortion in violation of the Travel Act. The Travel Act counts failed to allege the third element—namely, that the defendant committed an illegal act after the interstate

travel. The court nonetheless found the indictment sufficient because "when the indictment is read as a whole it gave the defendants notice that they were charged with attempts to extort ... on dates later than, as well as the same as, the dates of the interstate travel." *Esposito,* 771 F.2d at 288.

In *United States v. Wander,* 601 F.2d 1251 (3d Cir.1979), however, the court held that an indictment was insufficient because it failed to allege that same third element of a Travel Act violation—an unlawful act after the interstate travel. Although in that case another count, which charged conspiracy to violate the Travel Act, included the missing element in its overt acts section, the court refused to read that element into the Travel Act count because the indictment did not expressly incorporate it by reference. *See United States v. Gironda,* 758 F.2d 1201 (7th Cir.1985) (court must read each count of indictment independently of all other counts) *cert. denied,* 474 U.S. 1104, 106 S.Ct. 523, 88 L.Ed.2d 456 (1986). The same situation applies here. Count III of Hooker's indictment includes no incorporation by reference to the allegations in Counts I and II. This is a particularly striking omission because Count II does incorporate by reference the allegations in Count I, showing that the grand jury knew how to incorporate by reference if it so chose.

■ *Esposito* is also directly contrary to our own precedent. In *Hayes, supra,* this court cited *Wander* with approval and dismissed a Travel Act indictment because it failed to incorporate the missing element by reference to the other count, which was for conspiracy to violate the Travel Act. And in *Pomponio, supra,* this court dismissed an indictment charging interstate transportation of counterfeit securities despite the fact that the missing element of fraudulent intent apparently was contained in an earlier count that charged a different violation of the very *same* statute. Therefore, the law in this circuit does not support the government's position that a missing element can be read into an indictment from another count—at least not when the challenged count fails to incorporate the other counts by reference.

### D.

The government's final argument, also adopted by the court below, is that any deficiency in the indictment was harmless because it was cured by the charge to the jury. The jurors were instructed that in order to convict on the RICO conspiracy count, they must find that the business enterprise had an effect on interstate commerce. The government relies on *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), in which the Court found harmless an allegedly deficient indictment produced by a grand jury investigation conducted in violation of Fed. R.Crim.P. 6(d). The Court there held that the actual jury verdict ensured both that there had been probable cause for the grand jury's charge and that the charge was true beyond a reasonable doubt. The court concluded that because of the petit jury's ratification of probable cause, the societal costs of retrial were not warranted. The government argues that the present case is analogous to *Mechanik* because the petit jury actually considered the missing element and found that it was satisfied.

The government's position begs the question. The harmless error analysis in *Mechanik* derives from Fed.R.Crim.P. 52(a), which applies only to errors that do not affect substantial rights. *Mechanik* gives us guidance on how to deal with errors in indictments that do not affect substantial rights and is, in that regard, consonant with *Russell.* Because it concerned only a fairly technical violation of a procedural rule, however, it does not help us determine whether the error here affects a substantial right.

■ An essential element of a crime— one that affects a substantial right—is "one whose specification ... is necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *United States v. Cina,* 699 F.2d 853, 859 (7th Cir.1983), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). Al-

though the missing element here does not describe overt illegal behavior, it is nonetheless essential in a federal indictment because it establishes the court's jurisdiction. *See Stirone,* 361 U.S. at 218, 80 S.Ct. at 273 (Hobbs Act indictment must charge effect on interstate commerce in order to show federal government's jurisdiction of crime); *United States v. Moore,* 185 F.2d 92, 94 (5th Cir.1950) (indictment for violation of Fair Labor Standards Act does not state an offense if it does not show defendants were engaged in interstate commerce or otherwise within coverage of Act); *see also Diecidue,* 603 F.2d at 546 (identifying effect on interstate commerce as essential element of RICO offense).

■ Because the missing element in the present case was essential, its complete absence from Count III is a fatal defect. The first four elements of a RICO offense, as they were alleged in Count III, do not by themselves state *any* federal crime, nor do they show that the grand jury found all elements of *any* federal crime. The court thus had no jurisdiction to try Hooker under that count of the indictment, and its judgment must be vacated. *Cf. United States v. Roberts, supra,* (similar argument may have less weight in habeas corpus petition because jurisdiction of court is open to more limited attack in collateral proceedings), *cert. denied,* 369 U.S. 867, 82 S.Ct. 1033, 8 L.Ed.2d 85 (1962).

■ The absence of prejudice to the defendant in a traditional sense does not cure a substantive, jurisdictional defect in an indictment. *United States v. Smith,* 553 F.2d 1239, 1242 (10th Cir.1977). Unlike the situation in *Mechanik,* the defect of a completely missing essential element cannot be cured by a later jury instruction because there is nothing for a petit jury to ratify. For purposes of this case, the indictment relates solely to jurisdiction and pretrial notice. A petit jury verdict can do no more than show that the grand jury *could* have given the defendant adequate notice had it chosen to do so. This cannot undo the harm of failing to give that notice timely, nor can it confer jurisdiction on the court where none existed. Neither instruc-

tions nor a petit jury verdict can satisfy after the fact the Fifth Amendment right to be tried upon charges found by a grand jury. *Stirone,* 361 U.S. at 219, 80 S.Ct. at 274; *United States v. Camp,* 541 F.2d 737, 740 (6th Cir.1976).

We further note that in *Mechanik,* the grand jury's procedural error did not surface until the second week of trial. Given the advanced stage of the trial by that date, a harmless error analysis was appropriate. In the present case, by contrast, Hooker first moved to dismiss Count III fully two weeks before trial. The court erroneously denied that motion, and the government made no attempt to get a superseding indictment. In such a situation we must apply a more liberal standard in favor of the movant, *see Pheaster,* 544 F.2d at 361; *Wabaunsee,* 528 F.2d at 2, and a harmless error analysis is inappropriate. *See Mechanik,* 106 S.Ct. at 945 (O'Connor, J., concurring in the judgment); *Russell,* 369 U.S. at 763–64, 82 S.Ct. at 1046.

### E.

It is obvious that the government could easily have obtained a superseding indictment with little or no delay in the scheduled trial. Its failure to do so resulted in an enormous waste of resources by the court, the government, and the defendant. Regrettably, this is not the first occasion we have had reason to chastise the government for its lax practices in drafting indictments; more regrettably, it is unlikely to be the last. Our sentiments, as expressed in *Roberts,* 269 F.2d at 202, are as pertinent today as they were twenty-six years ago:

It is beyond our understanding that a [United States] Attorney would undertake to draw an indictment without having before him the statute which defines the offense, or, having the statute before him could be so careless as to omit allegations meeting the statutory definition of one of the essential elements of the crime. A defective indictment might come from a well-ordered office, but inexcusable carelessness in offices of [United States] Attorneys is suggested

by the frequency with which this court is required to consider questions of possible prejudice to defendants arising out of unexplainable defects in indictments. Such carelessness can save but little of the time of the [United States] Attorney in the preparation of indictments, but its consequence requires the needless expenditure of much time and effort by him, by defendants and their counsel and by the courts. Here, as in most situations, much waste could be avoided by an initial exercise of reasonable care. A few moments dedicated to care would have avoided entirely this controversy.

When these questions are before this Court, the [United States] Attorney or his Assistant at oral argument invariably disclaims personal involvement in the preparation of the defective indictment.... The [United States] Attorney, however, is responsible for the work-product of his office. It is proper and desirable for him to give his juniors training and experience in drafting indictments, but it is his duty to provide them with the guidance, counsel and supervision that are necessary to insure that their finished work is of a quality which the public has a right to expect and which should be required by a sense of professional pride. If the immediate cause of a defective indictment is the inexperience or carelessness of some junior-assistant, the defect evidences the failure of the [United States] Attorney to properly organize and conduct the business of his office.

In this case the facial deficiency in the indictment is even more intolerable because the government had actual notice of the defect well before trial, and had available a frequently-used mechanism for curing that defect by way of a superseding indictment.

### IV.

Hooker also alleges errors by the court that he claims deprived him of a fair trial. Most of these errors relate to Donald Wayne Thagard, a cooperating witness. A careful review of the record convinces us that Thagard's testimony, although substantial, was not critical to the government's case. There is adequate evidence in the tapes of conversations among the conspirators to support the jury's verdicts. Therefore, any errors related to the court's limitation on the cross-examination of Thagard about his knowledge of gambling activities, the revisionist statement by Thagard after trial about the disposal of his assets, the government's failure to produce the polygraph examination given to Thagard by state police, and the government's failure to provide the details of Thagard's plea agreement with the state would be harmless, and would not support Hooker's demand for a new trial. Therefore, we need not examine these alleged errors further.

The remaining allegation of error relates to the court's refusal to grant a new trial after the production of "new evidence" in the form of an affidavit by Francis Eck, Hooker's former law partner. At trial Eck was a defense witness and he stated that he had not discussed with Hooker the reporting requirements for bank deposits greater than $10,000; by affidavit after trial Eck stated that he had had a conversation with Hooker about that subject. Even if we view this "new evidence" in the light most favorable to Hooker, it indisputably relates to a minor point and does not justify a new trial.

### V.

In summary, we vacate the conviction and sentence on Count III and the forfeiture of Hooker's bank accounts based on that conviction. On remand the court is instructed to dismiss Count III without prejudice to the government to reindict and reprosecute Hooker if it chooses, including seeking forfeiture of Hooker's bank accounts. *Hayes*, 775 F.2d at 1283. We affirm the convictions on Counts I and II.

WILKINS, Circuit Judge, concurring in part and dissenting in part:

I concur in the affirmance of Hooker's convictions on Counts I and II, but I do not agree that Count III of the indictment was fatally defective. Although not a model

indictment, it was constitutionally sufficient. And significantly, any possible deficiency in Count III was harmless error and Hooker suffered no prejudice. Therefore, I respectfully dissent from reversal of the conviction on Count III for the reasons briefly stated below and discussed more fully in my dissent in the companion case of *United States v. Pupo*, 841 F.2d 1235, No. 86–5151.

### I.

Hooker was charged in Count III with conspiracy to violate 18 U.S.C.A. § 1962(c) (West 1984) (RICO). Section 1962(c) provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The indictment set forth the circumstances of the alleged offense and charged that Hooker was part of an "enterprise" that conspired "to violate Title 18, United States Code, Section 1962(c)," but it did not allege explicitly that the enterprise affected interstate commerce. The majority holds that omission of the words "affecting interstate commerce" rendered Count III fatally defective. In my view, citation to the applicable statute sufficiently alleged this requisite element. In any event, Hooker undeniably was given a fair trial with adequate notice and proper jury instructions.

### A.

To meet the guarantees of the fifth and sixth amendments, an indictment must (1) contain the elements of the offense charged and fairly inform a defendant of the charge against him, and (2) enable him to plead double jeopardy in defense of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046, 8 L.Ed.2d

240 (1962). It is generally sufficient for an indictment to allege an offense in the words of the statute, if those words "fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense." *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882), *quoted in Russell*, 369 U.S. at 765, 82 S.Ct. at 1047. Specifically, an indictment following the language of section 1962 adequately charges an effect on interstate commerce in a RICO conspiracy; an indictment may simply recite this term without further specificity. *United States v. Diecidue*, 603 F.2d 535, 547 (5th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781, 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980).

In view of these premises, I find no reasonable distinction between recitation of the terminology "affecting interstate commerce," and the specific allegation of violation of section 1962(c) which contains those words. A defendant's understanding of the offense is not aided by repetition of this statutory language when the statute allegedly violated is cited in the indictment. Of course, citation to the statute, or even recitation of the statutory language, is not an adequate allegation for every element of an offense, for some elements require greater detail or description of the alleged conduct of a defendant.

### B.

Following prior decisions from this circuit and others, the indictment against Hooker sufficiently alleged the offense charged by citing the statute. *See United States v. Duncan*, 598 F.2d 839 (4th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); *United States v. Stefan*, 784 F.2d 1093 (11th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 193, 93 L.Ed.2d 125 (1986); *United States v. Arteaga-Limones*, 529 F.2d 1183 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976); *United States v. Johnson*, 414 F.2d 22 (6th Cir.1969), *cert. denied*, 397 U.S. 991, 90 S.Ct. 1112, 25 L.Ed.2d 399 (1970).

In contrast, cases cited by the majority are either distinguishable or unpersuasive.

## II.

Hooker did not contend that he had inadequate notice of the charge or that his defense was hampered by the absence of an express allegation that the enterprise "affected interstate commerce." Nor was there an assertion that Hooker would have been unable to plead double jeopardy as a defense in any future prosecution for the same offense. Despite a total lack of prejudice, the majority holds that Count III was fatally defective, stressing form over substance. This conviction should be affirmed, for even assuming deficiency in Count III, Hooker clearly received a fair trial.

Applying the rationale of the recent Supreme Court decision in *United States v. Mechanik*, 475 U.S. 66, 70, 106 S.Ct. 938, 941, 89 L.Ed.2d 50 (1986), the guilty verdict of the petit jury shows that there was probable cause to charge Hooker with the offense of which he was convicted, and "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." The majority maintains that the harmless error analysis of *Mechanik* cannot be applied here because the court had no jurisdiction to try Hooker on the count which failed to expressly allege an effect on interstate commerce. Jurisdiction would have been lacking only if the indictment did not allege a federal crime through failure to allege by some means a connection with interstate commerce. *United States v. Silverman*, 430 F.2d 106, 112 (2d Cir.1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971), *modified on other grounds*, 439 F.2d 1198 (2d Cir.1970). In *Silverman*, the defendant was charged with embezzlement of union funds in violation of 29 U.S.C. § 501(c). The court held that the jurisdictional element of a nexus with interstate commerce was sufficiently alleged by use of the term of art "labor organization" which is defined in 29 U.S.C. § 402(i) as "a labor organization engaged in an industry affecting commerce." Although there was no indication that the grand jury was provided a copy of section 402(i) and the indictment did not refer to the definitional statute, the court held that use of the term of art sufficiently alleged the essential element of interstate commerce. *Id.* at 112. If, as in *Silverman*, the jurisdictional interstate commerce element could be alleged by use of a term of art defined in a statute not supplied to the grand jury nor even cited in the indictment, it could clearly be alleged by specifically charging a violation of section 1962 which contains the jurisdictional language "interstate commerce."

Certainly, it is preferable for an indictment to specify in detail each essential element, including recitation of boiler plate language taken from the applicable statute. But, in the instances where the preferred approach is not followed, reversal should not be automatically mandated in the total absence of any prejudice to a defendant whom all concede was afforded a fair trial.

Circuit Judges K.K. HALL and WILKINSON have asked to be shown as joining in this separate opinion.