UNITED STATES of America,
Plaintiff–Appellee,

v.

Dawn Dempsy SUTTON, a/k/a Denny,
a/k/a M & M, Defendant–
Appellant.

No. 91–5556.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1992.

Decided April 7, 1992.

Michael W. Patrick, Haywood, Denny, Miller, Johnson, Sessoms & Patrick, Chapel Hill, N.C., argued, for defendant-appellant.

Lisa Blue Boggs, Asst. U.S. Atty., argued (Robert H. Edmunds, Jr., U.S. Atty., Greensboro, N.C., on brief), for plaintiff-appellee.

Before SPROUSE, WILKINS, and LUTTIG, Circuit Judges.

## OPINION

WILKINS, Circuit Judge:

Dawn Dempsy Sutton was convicted by a jury of attempting to possess marijuana with intent to distribute, 21 U.S.C.A. §§ 841(a)(1), 846 (West 1981 & Supp.1991), and of carrying or using a firearm in relation to a drug trafficking crime, 18 U.S.C.A. § 924(c)(1) (West Supp.1991). On appeal he claims that the district court erred in denying his motion for judgment of acquittal. He also raises for the first time a claim that the count in the indictment charging a violation of 18 U.S.C.A. § 924(c)(1) was defective because it did not allege scienter. We affirm.

## I.

Pursuant to a reverse sting undercover operation, D.E.A. Special Agent Deignan and a confidential informant represented to Milton Gauldin and Phillip Abram that they had a quantity of marijuana for sale. Abram then contacted appellant Sutton and informed him that he knew of a source from whom marijuana could be purchased. A message was relayed through Gauldin to Agent Deignan that Gauldin and Abram had contacted a potential purchaser. Acting on Agent Deignan's instructions, Gauldin met with Sutton and discussed with him the quality, price, and quantity of the marijuana available for purchase. Sutton told him that he would begin making arrangements to obtain the money necessary to purchase the marijuana.

At Sutton's request Gauldin arranged a meeting with Agent Deignan and the informant at a motel room the following day. While Agent Deignan was outside the room getting a sample of marijuana for Sutton's inspection, Sutton produced a device that would detect the presence of electronic listening equipment and used it to scan the room. When Agent Deignan returned, Sutton inspected and approved the quality of the marijuana, stated that he was interested in making an initial purchase of 25 pounds, and agreed to pay Agent Deignan $27,500. Sutton informed Agent Deignan that he would leave the motel to get the money and would return with it later in the day.

After leaving the motel with Gauldin, Sutton made a telephone call during which he made preliminary arrangements to receive $11,000 of the purchase price for the transaction. The two men proceeded to Abram's residence where Sutton retrieved a briefcase containing approximately $16,000 and a handgun. Gauldin and Sutton left Abram's residence and went to a local restaurant where Gauldin waited while Sutton made several additional telephone calls. Following a brief absence, Sutton returned and stated that he had the full purchase price and was ready to meet with Agent Deignan. While en route to the motel, Sutton stated to Gauldin that he was carrying a weapon because he did not want to "get ripped off."

At the beginning of the second meeting, Sutton produced a bag containing approximately $28,000 and the loaded handgun. He placed the handgun on the table, pointed it towards Agent Deignan, positioned his hand above it, and instructed Agent Deignan to count the money. After the money was counted, Sutton instructed Agent Deignan to deliver the marijuana to him at Abram's residence. Agent Deignan and Sutton agreed that Agent Deignan would remain in the motel room until Sutton called to give him directions to Abram's residence. Sutton and Gauldin then exited the room and were arrested outside the motel. A search of Sutton incident to his arrest resulted in the seizure of the handgun, ammunition, and a bag containing approximately $28,000.

## II.

■ In order to support a conviction of a crime of attempt, "the evidence must show (a) culpable intent,[1] and (b) a substantial step toward the commission of the crime that is strongly corroborative of that intent." *United States v. Pelton*, 835 F.2d 1067, 1074 (4th Cir.1987), *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). " '[A] substantial step' " is " 'more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime.' " *United States v. Delvecchio*, 816 F.2d 859, 861 (2d Cir.1987) (quoting *United States v. Martinez*, 775 F.2d 31, 35 (2d Cir.1985)). Sutton contends that notwithstanding his possession of the money and expression of a desire to purchase the marijuana, his unwillingness to take actual possession of the marijuana at the motel precludes a finding beyond a reasonable doubt that he engaged in conduct sufficient to constitute a substantial step toward commission of the offense of attempted possession of marijuana with intent to distribute.

To the contrary, the evidence fully supports the conclusion of the jury that Sutton's conduct comprised the necessary "substantial step." Indeed, the only step remaining here was an actual exchange of the money and the marijuana, which would have constituted the final act necessary for commission of the substantive offense of possession of marijuana. Sutton inspected a sample of marijuana furnished by Agent Deignan and found it acceptable. Agent Deignan and Sutton agreed upon price and quantity terms, and Sutton had the funds available to make the purchase. This latter fact, among others, distinguishes this case from those in which other courts of appeals have declined to uphold convictions for offenses involving attempted possession of narcotics because there was no evidence that the defendants were willing and able to tender the purchase price. *See Delvecchio*, 816 F.2d at 862 (no evidence that appellants "had either acquired or attempted to acquire the almost one million dollars necessary to complete the purchase");

*United States v. Cea*, 914 F.2d 881, 888 (7th Cir.1990) (no evidence that defendant "had the money to complete the purchase and thereby obtain possession of the cocaine"); *United States v. Joyce*, 693 F.2d 838, 840 (8th Cir.1982) (defendant who possessed sufficient money to purchase cocaine refused to produce it for seller).

Viewing the evidence in a light most favorable to the Government, we conclude that substantial evidence supports Sutton's conviction of attempted possession of marijuana with intent to distribute. *See United States v. Stockton*, 788 F.2d 210, 218 (4th Cir.), *cert. denied*, 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986). Accordingly, the district court did not err in denying the motion for judgment of acquittal.

## III.

Sutton next claims that the indictment was fatally defective because it failed to allege that he knowingly or wilfully committed a violation of 18 U.S.C.A. § 924(c)(1), a claim that he did not raise in the district court. Section 924(c)(1) provides an enhanced penalty for "[w]hoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm." The indictment charged:

On or about September 14, 1990, in the County of Alamance, in the Middle District of North Carolina, DAWN DEMPSY SUTTON, also known as "Denny" and "M & M," during and in relation to a drug trafficking crime for which he could be prosecuted in a court of the United States, that is, attempting to possess with intent to distribute marijuana, in violation of Title 21, United States Code, Section 846, did carry and use a firearm, that is, a Davis Industries 9mm handgun, Model P–380, Serial Number AP003656; in violation of Title 18, United States Code, Section 924(c)(1).

■ A defense or objection based on the failure of an indictment to allege an essential element of a crime may be raised at

---

1. Sutton does not claim that the evidence did    not satisfy the culpable intent element.

any time during the proceedings. Fed. R.Crim.P. 12(b)(2). However, when a challenge is urged for the first time on appeal, "[i]ndictments and informations are construed more liberally ... and every intendment is then indulged in support of the sufficiency." *Finn v. United States,* 256 F.2d 304, 307 (4th Cir.1958). We must "determine only whether 'the necessary facts appear in any form, or by a fair construction can be found within [its] terms.'" *Id.* at 306 (quoting *Hagner v. United States,* 285 U.S. 427, 433, 52 S.Ct. 417, 420, 76 L.Ed. 861 (1932)).

To meet the demands of the Fifth and Sixth Amendments, an indictment must (1) contain the elements of the charged offense and fairly inform a defendant of the charges against him, and (2) enable him to plead double jeopardy in defense of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Sutton does not contend that his defense was hampered by the absence of an express allegation of scienter, that he had inadequate notice of the charges against him, or that he would be unable to plead a double jeopardy defense in subsequent prosecutions for the same offense. He contends only that the indictment, in failing to expressly allege scienter, did not fully set forth the elements of the offense. We reject this argument. In doing so, we find persuasive the reasoning of the Fifth Circuit in *United States v. Wilson,* 884 F.2d 174 (5th Cir.1989), a case virtually identical to this one. In *Wilson,* the court considered a post-verdict challenge to an indictment that failed to include scienter in charging a violation of 18 U.S.C.A. § 924(c)(1) and held that the indictment, liberally read, fairly imported knowledge of the facts constituting the offense and thus adequately alleged all essential elements. 884 F.2d at 179–81. We conclude that in alleging that Sutton "did carry and use" a firearm, the indictment sufficiently imported knowledge of the essential facts of the crime.[2] *See United States v. Purvis,* 580

F.2d 853, 859 (5th Cir.1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979).

This decision is not in conflict with *United States v. Pupo,* 841 F.2d 1235 (4th Cir.) (en banc), *cert. denied,* 488 U.S. 842, 109 S.Ct. 113, 102 L.Ed.2d 87 (1988). In *Pupo* we held insufficient an indictment that did not allege, either expressly or through words of similar import, that the defendants "knowingly or intentionally" possessed with intent to distribute and distributed cocaine in violation of 21 U.S.C.A. § 841(a)(1). *Id.* at 1238. This omission resulted in the failure of the indictment to charge elements of scienter that were expressly included in the statutory language proscribing the indicted conduct. *Id.* at 1239. And, because the objection to the indictment was raised prior to verdict, the *Pupo* court held inapplicable the rule of *Finn,* 256 F.2d at 307, that allows a more liberal reading of an indictment if not challenged until after a verdict is returned. 841 F.2d at 1239. Here, the indictment tracked the statutory language of section 924(c)(1), language that does not include the element of scienter. Moreover, Sutton's failure to raise an objection prior to verdict warrants a more permissive review of the sufficiency of the charge. *See id.*

## IV.

Sutton also claims that the district court erred in denying his motion for judgment of acquittal because he did not use or carry a firearm during a drug trafficking crime. This remaining issue is without merit.

AFFIRMED.

---

2. We disagree with the reasoning of the district court in *United States v. Hawkins,* 741 F.Supp. 1234 (N.D.W.Va.1990) (indictment failing to allege scienter element in charging violation of section 924(c) was fatally defective).