**UNITED STATES of America**

v.

**KYUNG KIM, Defendant.**

**Case No. 12–968M.**

United States District Court,
D. Maryland,
Southern Division.

Oct. 2, 2012.

*MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR DISMISSAL*

CHARLES B. DAY, United States Magistrate Judge.

On countless occasions on the federal lands within the State of Maryland, law enforcement officers issue traffic citations known as "Violation Notices" to motorists for alleged traffic offenses. When a trial is necessary to determine whether the motorist is guilty, the Government must clearly indicate that a motor vehicle offense has occurred, and identify the wrongful conduct. On this occasion, the Government has missed the mark.

## I. *Background*

The record evidence shows that on January 4, 2012, Kyong Kim was driving a motor vehicle northbound on the Baltimore–Washington Parkway, a roadway within the unique territorial jurisdiction of the United States. A United States Park Police Officer was "operating a MVA scanner," which he described as a device which "reads license plates and gives alerts to registered owners suspended, cars stolen," and other driver information. The officer testified that as to Mr. Kim's vehicle, the "tag scanner went off making an alert

signifying that the defendant's vehicle had a suspended registered owner." Upon obtaining an electronic version of the driver's license of the owner of the vehicle, the officer visually verified Mr. Kim as the operator and initiated a traffic stop. Mr. Kim was eventually charged with "Operating After Suspension," under Md.Code Ann., Transp., § 16–303 (West 2009).

On June 28, 2012, the trial began. Prior to the presentation of evidence, the Court inquired if there were any "preliminary matters" to be raised by either party. Defense counsel replied, "Your Honor, we have nothing preliminary. We reserve the right to raise matters at the appropriate time." Counsel for the Government immediately expressed concern, and indicated that if the defense was intending to raise a "motion to suppress" then the Government was requesting that it be raised before trial and in writing. The Court agreed with the Government by indicating that a failure to do so would result in a waiver of any motion required to be raised prior to trial. Without further discussion, the Government was permitted to present its evidence.

The Government's case consisted of testimony of the police officer and a single exhibit, namely, the State of Maryland Motor Vehicle Administration's certified record of Mr. Kim's driving record ("MVA record"). At the close of the Government's case, the defense moved for judgment of acquittal and/or dismissal ("Defendant's Motion"). Additional briefing by the parties was permitted, and the full extent of their arguments is set forth below. The initial thrust of the Government's position is that Defendant's Motion is waived due to his failure to raise the challenge before the Government presented its evidence.

## II. Defendant Never Waived His Right to Argue that the Violation Notice Failed to State an Offense.

Because the alleged offense occurred on the Baltimore–Washington Parkway, federal law generally governs the prosecution of this case. *See United States v. Smith*, 1991 WL 209830 (4th Cir. Oct. 21, 1991); *United States v. Dreos*, 156 F.Supp. 200 (D.Md.1957); *United States v. Sinclair*, 2011 WL 4986037 (D.Md. Oct. 19, 2011). However, this Court looks to the substantive traffic laws of Maryland. The Baltimore–Washington Parkway is under the jurisdiction of the National Park Service. The Code of Federal Regulations, which assimilates the motor vehicle laws of the State of Maryland into federal proceedings, makes the state traffic regulations applicable to the Baltimore–Washington Parkway. 36 C.F.R. 4.2 (2012).

While the substantive law is borrowed from the State of Maryland, the procedural law is still a function of federal law. *See United States v. Sauls*, 981 F.Supp. 909, 911 (D.Md.1997); *United States v. Price*, 812 F.2d 174, 175 (4th Cir.1987)(under another statute that assimilates state substantive laws, the elements of an offense and penalties are adopted, but not the procedural or evidentiary rules). Of significance, in federal court certain procedural motions must be raised before trial, including:

(B) A motion alleging a defect in the indictment or information—**but at any time** while the case is pending, **the court may hear a claim that the indictment or information fails** to invoke the court's jurisdiction or **to state an offense;**

Fed.R.Crim.P. 12(b)(3)(B) (emphasis added). The Rule makes clear that questions regarding the failure to state an offense can be entertained by the Court at any time. This includes not only the period

before testimony is received, but also the period up to the moment on which a verdict is issued. One does not waive a "failure to state an offense" motion by raising it after the trial has begun.

Here, the Government is attempting to reclassify Defendant's position as a motion to suppress.[1] However, the record is clear that the defense did not waive its right to challenge the legitimacy of the charging document. Defendant merely waived the right pursue any "motions to suppress." Defendant's Reply to Government's Response to Motion for Judgment of Acquittal and/or Dismissal ("Def.'s Reply") 2.

While the Government's brief concedes that the defense argued that "there was no offense charged under Maryland law," the Government strongly posits that Defendant's Motion should be viewed as one generally alleging a defect in the charges, requiring resolution before jeopardy attaches. Government's Response to Motion for Judgment of Acquittal and/or Dismissal ("Govt.'s Response") 2. The Court agrees with the defense. Aside from typical evidentiary objections, the defense never sought to prevent the introduction of evidence offered by the Government. In fact, it was not until the Government rested its case that the defense made a motion at all. There is no evidence here to suppress. The real issue in Defendant's Motion is whether the charging document fails to state an offense, and Defendant did not waive his right to make this argument.

### III. *Defendant Otherwise Timely Filed His Motion.*

■ The Court does not find Defendant's Motion to be of the same genre as

those requiring a pre-trial resolution. As a leading commentary has stated,

> Among the motions covered by [the defective indictment language requiring resolution before trial] are irregularities and delay in obtaining the indictment or information, improper selection of grand or trial jury, improper reference of a matter to a magistrate or the failure of the magistrate to follow the Criminal Rules, misjoinder of offenses or defendants, duplicity, multiplicity, lack of specificity in the indictment or information, those defects in an indictment or information that go to matters of form rather than substance, and other flaws.

1A Charles Alan Wright, Andrew D. Leipold, Peter J. Henning, & Sarah N. Welling, *Federal Practice & Procedure* § 193 (4th ed. 2008)(footnotes omitted). *See United States v. King,* 628 F.3d 693 (4th Cir.2011) (duplicity challenge is waived if not raised before trial); *United States v. Cabrera–Beltran,* 660 F.3d 742 (4th Cir.2011)(failure to assert before trial a claim of multiplicity in the indictment is waived); *United States v. Hicks,* 255 Fed. Appx. 749 (4th Cir.2007)(defense waives challenge to indictment due to a lack of a signature in cursive writing by the grand jury foreperson if not made before trial). Here, Defendant does not argue about improprieties in obtaining the charge, misjoinder, duplicity, or lack of specificity. Defendant's argument is one of substance, which the Court must carefully consider.

The Government's reliance on *United States v. Crowley,* 318 F.3d 401 (2d Cir. 2003) is unavailing. An earlier decision from that court reveals that the defendant's motion for a new trial was granted on the basis that the indictment lacked

---

1. Strict compliance with the federal rules requires all motions to suppress to be made before trial. One reason why the Government insists upon the resolution of motions to suppress before trial, is that under 18 U.S.C.

§ 3731, the Government may pursue an interlocutory appeal upon the entry of an adverse order. *United States v. Wilson,* 115 F.3d 1185, 1190 (4th Cir.1997).

specificity. *United States v. Crowley*, 236 F.3d 104, 106 (2d Cir.2000). The defendant was correctly charged with attempting to commit sexual abuse in violation of 18 U.S.C. 2241. The statute makes it unlawful to knowingly cause another person to engage in a sex act. A "sexual act" is further defined in four specific ways in the following section of the statute. In *Crowley*, the indictment did not indicate which "sexual act" was implicated. The appellate court agreed with the prosecution that the claimed lack of specificity was an issue that should have been raised under the mandatory provision of Fed.R.Crim.P. 12(b)(3)(B). The court went on to state, "[b]y contrast, a claim that an indictment does not charge an offense may be raised at any time, and may be considered by the court *sua sponte*." *Id.* at 108, n. 6.[2]

By way of analogy, if the Government in the case at bar had alleged a violation of § 16–303(h) generally, the allegation would lack "specificity" in that § 16–303(h) is further defined in four different sections of the Transportation Code in an effort to identify the wrongful conduct implicated. Just as in *Crowley*, such a problem would be cured by a mandatory motion under Fed.R.Crim.P. 12(b)(3)(B). Defendant's Motion alleges a different problem: failure to identify any crime. Section 16–303 does not, without further description, articulate a specific violation of the law. Section 16–303 is a compilation of nine distinct traffic

offenses and one administrative provision. It is a collage of offenses including four broad categories of driving with a "suspended" license, two categories of driving with a "canceled" license, two categories of driving with a "revoked" license, and one category for driving with a "refused" license. Thus, Defendant's Motion is properly classified as a failure to state an offense.

## IV. *A Violation Notice Which Merely Alleges Operating After Suspension or Driving While Suspended in a General Fashion Fails to State an Offense.*

### A. The Violation Notice Must Allege Essential Facts, Give Fair Notice, and be Sufficiently Distinctive so as to Bar a Second Prosecution.

Federal Rule of Criminal Procedure 58(b)(1) states in pertinent part that the "trial of a petty offense may also proceed on a citation or violation notice."[3] The law of the Fourth Circuit has clearly defined standards for charging documents. A valid indictment must: "(1) allege the essential facts constituting the offense; (2) allege each element of the offense, so that fair notice is provided; and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense." *United States v. Bolden*, 325 F.3d 471, 490 (4th Cir.2003)(quoting *United States v. Smith*, 44 F.3d 1259, 1263 (4th Cir.1995)).[4]

---

2. The subsequent appellate history merely relies upon the legal principle of adhering to the "law of the case." 318 F.3d at 420.

3. Title 18 U.S.C. 19 defines a "petty offense" to include a "Class B misdemeanor." Pursuant to 18 U.S.C. 3559, Class B misdemeanors are classified as having a maximum period of imprisonment of six months or less. Under 36 C.F.R. 1.1, *et seq.*, the penalty for motor vehicle violations in a national park such as the Baltimore Washington Parkway is imprisonment for up to six months.

4. The Court is not aware of any federal case clearly stating that a Violation Notice is not held to the same standards of clarity as indictments and other charging documents. Several states have done so indicating that traffic citations enjoy more leeway. *See People v. Tammen*, 40 Ill.2d 76, 78–79, 237 N.E.2d 517, 518–19 (1968). Yet, even with a relaxed standard, specific language or statutory subsections are required to correctly advise the accused of an offense where multiple subsections could be at issue. *See People v. Doherty*, 139 Ill.App.3d 1028, 1032, 94 Ill. Dec. 350, 487 N.E.2d 1227, 1229 (1986).

Here, the Violation Notice fails to satisfy this standard.

■ The Violation Notice provides the necessary allegations that Defendant was "operating" a motor vehicle, while a "suspension" of his privilege to do so was in effect.[5] What it fails to allege is the balance of § 16–303(c), namely that the suspension occurred in the State of Maryland so as to provide fair notice and protect against multiple prosecutions. The statute reads, "A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while the person's license or privilege to drive is suspended **in this State**." Md.Code Ann., Transp., § 16–303(c) (emphasis added). Alternatively, the suspension of one's driver's license could arise under § 16–303(f) from "any other state"; under § 16–303(h) implicating four other conditions of the Transportation Code; or under 16–303(i) for an out of state suspension due to a failure to appear for court or a failure to pay a fine. Each subsection requires different elements of proof.[6] The generic charge under § 16–303 does not allege the essential facts, does not provide fair notice, and is not "sufficiently distinctive" to bar a second prosecution for the same offense.

The Maryland Court of Appeals has determined that § 16–303 is not a single offense, but several separate and distinct ones. "The common issues we must decide in these consolidated cases are whether the General Assembly in § 16–303 intended to create a single offense which can be committed in different ways or instead, intended to create several distinct offenses." *Jones v. State*, 357 Md. 141, 742

A.2d 493, 499 (1999). The court went on to conclude that § 16–303 did in fact create "separate and distinct offenses." *Id.* At 504. A failure to identify in the charging document the "separate and distinct" offense at issue is fundamentally unfair.

■ The Government argues that "untimely challenges to indictments for failure to charge an offense must be construed liberally in favor of the validity of the indictment. *United States v. Sutton*, 961 F.2d 476, 478–79 (4th Cir.1992)." Govt.'s Response 5. While true, the context of the legal premise is quite different from that of the present case. More fully stated, the *Sutton* court noted that

> [a] defense or objection based on a the failure of an indictment to allege an essential element of a crime may be raised at any time during the proceedings. Fed.R.Crim.P. 12(b)(2). However, when a challenge is urged for the first time on appeal, indictments and informations are construed more liberally . . . . and every intendment is then indulged in support of the sufficiency."

*Id.* (quoting *Finn v. United States*, 256 F.2d 304, 307 (4th Cir.1958) (internal citations omitted)). *Sutton* addresses the situation when an appellate court is considering the construction of the charging document. The standard is not the same at the trial court level, where this case sits. Accordingly, the Government is not entitled to a liberal construction of the Violation Notice. The defense is entitled to full and fair notice of the alleged offense in the charging document.

---

Even assuming, *arguendo*, that a relaxed standard applies here, the Violation Notice does not accurately advise the defense of the statutory subsection at issue.

**5.** The Court assumes that the Violation Notice adequately alleges the use of a motor vehicle.

**6.** While not applicable here, under State Law the penalties vary for each subsection reflecting the legislative intent to treat each offense differently. Depending on where the prosecution occurs, certain provisions would entitle a defendant to a Sixth Amendment trial by jury.

### B. "Operating After Suspension" is the Functional Equivalent of "Driving While Suspended."

Maryland Code Annotated, Transportation, §§ 16–303(c), (f), (h), and (i) make it unlawful to "drive" a motor vehicle on the roadways of the state with a suspended license. The Code defines the term "drive" to mean, "drive, **operate,** move, or be in actual physical control of a vehicle, including the exercise of control over or the steering of a vehicle being towed by a. motor vehicle." Md.Code Ann., Transp. § 11–114 (emphasis added). In the same definitional section, the Code defines "operate" to mean "**drive,** as defined in this subtitle." Md.Code Ann., Transp. § 11–141 (emphasis added). Clearly, the legislative intent is for these terms to be used interchangeably. Therefore, one of the distinctions implied by the argument of the defense, is no real distinction at all. "Driving" and "operating" are legally synonymous under the Maryland Transportation Code.

The remaining distinction is the use of the word "after" in the Violation Notice, instead of the term "while" that is used in the statute. Maryland's Transportation Code makes no attempt to define either term, and the Court is left to apply the plain meaning of each term in context. When doing so, the Court is of the opinion that the use of either term is appropriate. While the Court appreciates the argument, namely that the use of the term "after" by necessity includes periods following the lifting of a suspension, such an approach is mere legal "word-smithing" at its best. The clear import of either phrase—driving "while" suspended, or driving "after" suspended—is that it is unlawful to drive or operate a motor vehicle under a declaration of suspension. The use of the word "after" is neither misleading nor prejudicial to the accused. On this point, the Court agrees with the Government in noting that Defendant's argument is no more than "a linguistic technicality." Govt.'s Response 4.

### V. The Government Cannot Defeat Defendant's Motion with Claims of Strategic Failure, Lack of Particularity, or Other Alleged Defects.

The Government contends that Defendant's election to pursue his motion at the close of the Government's case amounts to a strategic failure. Relying on *United States v. Kehoe,* 516 F.2d 78 (5th Cir.1975) *cert. denied* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 313 (1976), the Government notes that such a tactical approach did not immunize the defendant from a subsequent prosecution under a claim of double jeopardy. In *Kehoe,* the court used an "interest-balancing approach" to conclude that the defendant's self-interest in employing . . such a strategy is outweighed by "an equally legitimate demand for public justice." *Id.* at 85.

The point that is not addressed in the Government's argument is that the discussion in *Kehoe* regarding double jeopardy had no application in the original proceedings at trial. The trial court in the original case granted the motion of acquittal on the basis that the indictment failed to state an offense. As the appellate court stated in footnote three, "the correctness of this ruling is not before us." *Id.* at 81, n. 3. Accordingly, the Government's reliance on this Fifth Circuit decision is misplaced.

The Government suggests that its failure to set forth the particular subsection of § 16–303 is a mere technical omission, and that courts "have upheld indictments with far more serious omissions. *See, e.g., United States v. Bolden,* 325 F.3d 471, 492 (4th Cir.2003)." Govt.'s Response 5. *Bolden* is distinctive in that the defendants were charged with a "multiple-object conspiracy." The defendants were

suggesting that the charge was flawed because it failed to allege which of five offenses was the object of the conspiracy. "The Courts have uniformly upheld multiple-object conspiracies, and they have consistently concluded that a guilty verdict must be sustained if the evidence shows that the conspiracy furthered any one of the objects alleged." *Id.* Quite simply, the *Bolden* case did not involve an "omission" in the charging document at all. The court stated that "Count Thirty–Seven was not required to allege the specific type of money laundering the Boldens conspired to commit." *Id.*

At no time prior to resting its case did the Government suggest which, if any, portion of Section 16–303 it was relying upon. While the MVA record is properly before the Court, it does not articulate a basis for suspension. Even during the arguments on the record, the Government did not attempt to classify the suspension. The defense is entitled to know which subsection is applicable in each prosecution.

## VI. The Government Has Failed to Offer "Prima Facie" Evidence that Defendant's Driver's License Was Suspended.

The MVA record is current through January 9, 2012. It fails to show that Defendant's license was in fact suspended. The MVA record indicates that a suspension letter was mailed to Defendant on November 28, 2011. However, the MVA record also reveals that on December 14, 2011, said suspension was held in abeyance. There is no indication that the suspension ever became active again. Aside from the chronological detail set forth above, the only indications of suspension are on the first and last pages of the document. Said references are unexplained, unsupported, and at a minimum inconsistent with the detailed account activity. Presently, the only question is whether Defendant's license as of January 4, 2012 was suspended. The present record does not support such a belief. Accordingly, Defendant's Motion on this issue is granted.

## VII. The Government Has Failed to Offer "Prima Facie" Evidence that Defendant was Aware of a Suspension.

Under *McCallum v. State*, 81 Md.App. 403, 567 A.2d 967 (Md.Ct. Spec.App.1990), *aff'd*, 321 Md. 451, 583 A.2d 250 (1991), the Government must demonstrate the *mens rea* element of the offense. Unlike *McCallum*, the present record is devoid of evidence regarding the procedures used by the Motor Vehicle Administration to notify drivers of a suspension of their driving privileges. While the Government argues that a letter was mailed to the last known address of Defendant, no testimony has been offered in support thereof. Similarly, no evidence is before the Court regarding the administrative practices of the Motor Vehicle Administration to provide such notice.

The Government's final suggestion is that Defendant "knew or should have known" that his license was suspended on the date of his arrest. The Government leans heavily on *United States v. Haynesworth*, 743 F.Supp. 388 (D.Md.1990). There is no need to entertain this idea when the present record is clear that the Motor Vehicle Administration was holding any supposed suspension in abeyance. Simply stated, the MVA record indicates that as of January 4, 2012, Defendant's license was not suspended. Accordingly, Defendant's Motion on this issue is granted.

## VIII. Conclusion

It is the view of this Court, that the Government is not permitted to obtain a conviction by charging Md.Code Ann.,

Transp., § 16–303 in a generic fashion. In order to properly state an offense, the Government must assert the violation of a particular subsection of the statute. Moreover, on these facts the Government has failed to establish a *prima facie* case showing Defendant's driver's license was suspended, and if so, that he was aware of the suspension. Accordingly, the Court hereby GRANTS Defendant's Motion. The Court will enter a separate Order consistent with this opinion.